UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANDRE BROWN, ) <br> ) <br> Petitioner, ) <br> ) <br> v. ) <br> ) <br> DONALD GAETZ, Warden, ) <br> Menard Correctional Center, ) <br> ) <br> Respondent. ) | No. 08 C 6666 <br><br> Judge John W. Darrah |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon the Petition of Andre Brown for a Writ of *habeas corpus* pursuant to 18 U.S.C. § 2254. For the reasons stated below, the Petition for a Writ of *habeas corpus* is denied.

### BACKGROUND

Leon Mayes was shot to death in the early morning hours of October 10, 2000, on the south side of Chicago. Mayes sat in the front passenger seat and his girlfriend, Brenda Green, sat in the driver's seat of a parked Chevrolet when a Pontiac driven by Petitioner passed. Petitioner stopped the Pontiac, put the car in reverse and backed it up even with the Chevrolet. At that point, Derrick Stevens was in the front passenger seat of the Pontiac and Marlin Gosa and an unknown man were in the back seat. Petitioner, Stevens and Gosa were all members of the Black P. Stone gang.

After someone in Petitioner's car yelled in the direction of Green's car, Green drove off at Mayes' direction. Petitioner pursued, resulting in a high-speed chase that continued for several blocks. While the cars sped along, Petitioner, brandishing a firearm, stuck his arm out the driver's side window and began firing shots at Green's car. After hearing shots, Green

looked in her rearview mirror and saw Petitioner firing the gun at her car. Mayes then yelled at Green to jump out of the car, which she did. The Chevrolet rolled along before hitting a street pole. After the Chevrolet hit the pole, Petitioner stopped the Pontiac. Stevens jumped out, then carrying Petitioner's firearm, ran up to the Chevrolet and fired the handgun repeatedly into the passenger side of the vehicle, where Mayes remained seated. After he fired the shots, Stevens jumped back inside the Pontiac, which sped off. Leon Mayes died as a result of 13 gunshot wounds.

Subsequently, Petitioner was convicted for first-degree murder after a jury trial in the Circuit Court of Cook County. He was sentenced to 30 years for murder and 20 years for personally firing a weapon. While the jury deliberated before rendering the guilty verdict, a police report, not admitted into evidence, was erroneously sent to the jury room. A sheriff witnessed a jury member reading the report, immediately took it away and delivered it to the judge. The report had been mistakenly left in an envelope that contained admitted exhibits. The report named Petitioner (by his nickname, "Striker") as the offender and also listed the names of five witnesses to the murder who never testified at trial. After the police report was taken from the jury, the jury sent out two notes to the court, requesting to inspect the police report again. On the first occasion, the court read the note to the attorneys for the parties and denied the jury's request. The court responded, with the approval of Petitioner's attorney, "No, you may not have additional evidence. You have received all of the evidence. I direct your attention to the first instruction that indicates the evidence which you should consider consists only of the testimony of the witnesses, the exhibits, and stipulations which the Court has received." After further

deliberation, the jury made a second request to inspect the police report. The court, without objection, had determined to repeat its previous answer, but the jury rendered a guilty verdict before the response was made.

The trial court then denied Petitioner's motion for a mistrial, finding no prejudice to Petitioner as a result of the police report entering the hands of the jury. On appeal, the Illinois Appellate Court affirmed the conviction. Petitioner's leave to appeal to the Illinois Supreme Court was denied.

Petitioner now files this Petition for Writ of *habeas corpus*. Petitioner argues that the Illinois Court of Appeals violated his rights under the Sixth and Fourteenth Amendments of the United States Constitution when it applied the improper standard of review when determining whether he was prejudiced by the presence of the inadmissible police report in the jury room. Petitioner also requests that this Court grant a new trial.

## LEGAL STANDARD

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), an application for a writ of *habeas corpus* may not be granted unless adjudication of the claim in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *Jackson v. Frank*, 348 F.3d 658, 662 (7th Cir. 2003) (citing to 28 U.S.C. § 2254(d)(1)). A state-court decision is contrary to clearly established law if it applies a legal standard inconsistent with governing Supreme Court precedent or contradicts the Supreme Court treatment of a materially identical set of facts. *Bell v. Cone*, 535 U.S. 685, 694, 122 S. Ct. 1843 (2002) (*Bell*); *Bynum v.*

*Lemmon*, 560 F.3d 678, 684 (7th Cir. 2009). Similarly, a state court acts contrary to clearly established federal law if it applies a legal rule that contradicts prior Supreme Court holdings. *Ramdass v. Angelone*, 530 U.S. 156, 165-66 (2000).

The AEDPA modified a federal *habeas* court's role in reviewing state prisoner applications in order to prevent federal *habeas* "retrials" and to ensure that state-court convictions are given effect to the extent possible under law. *Bell*, 535 U.S. at 693. Consequently, the AEDPA calls for federal courts to presume the correctness of state courts' factual findings unless applicants rebut the presumption with "clear and convincing evidence." *Schiro v. Landrigan*, 550 U.S. 465 (2007).

## ANALYSIS

Petitioner argues his Petition for *habeas corpus* relief should be granted because the Illinois Appellate Court applied law that was contrary to clearly established federal law. Because the police report that mistakenly entered the jury room contained the names of non-testifying witnesses, Petitioner argues that upon discovery of the names in the report, the jury could reasonably have believed the non-testifying witnesses could identify Petitioner as the offender. Because Petitioner was never able to cross-examine those witnesses, he argues, his Sixth Amendment right to confrontation was violated. Further, Petitioner contends that the Illinois Appellate Court applied the wrong test when it ruled on this constitutional issue, implementing an "aura of mystery" analysis rather than the standard set forth in *Chapman v. California*, 386 U.S. 18 (1967) (*Chapman*), as explained below.

*The Chapman Standard*

When Petitioner's Sixth and Fourteenth Amendment rights were called into question, it was incumbent for the Illinois Appellate Court to apply the standard set forth in *Chapman*. However, not all constitutional errors in a criminal case automatically result in a reversal of a conviction. *Chapman*, 386 U.S. at 22. In *Chapman*, the Supreme Court held that in order for a constitutional error to be ruled harmless, the court must be able to find that the error was harmless beyond a reasonable doubt. *Id.* at 24.

This standard is universally applied when a criminal defendant alleges constitutional violations. *See U.S. v. Prieto*, 549 F.3d 513 (7th Cir. 2008) (Fifth Amendment); *U.S. v. Stark*, 507 F.3d 512 (7th Cir. 2007) (Fifth Amendment); *U.S. v. York*, 572 F.3d 415 (7th Cir. 2009) (Sixth Amendment); *U.S. v. Ochoa-Zarate*, 540 F.3d 613 (7th Cir. 2008) (Fifth and Sixth Amendments).

As mentioned above, the Illinois Appellate Court should have applied the *Chapman* standard to determine if the error regarding the police report in the jury room was harmless beyond a reasonable doubt. Instead, the court ruled that since Petitioner *was not prejudiced*, reversal of the conviction was not required. The court held Petitioner was not prejudiced because there was no "aura of mystery" surrounding the police report. *People v. Brown*, No. 1-04-3132 (Ill. App. 2007) at 12. The appellate court never determined whether the error was harmless beyond a reasonable doubt.

Section 2254(d) requires federal courts to give state-courts opinions a respectful reading and to give careful consideration to their conclusions. *Williams v. Taylor*, 529 U.S. 362, 387 (2000). When the state court addresses a legal question, however, it is the law "as determined by the Supreme Court of the United States that prevails." *Id.*

Although the Illinois Appellate Court applied law that was contrary to clearly established Supreme Court law, this Court, on collateral review, must consider this error pursuant to the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619 (1993).

### *The Brecht Standard Applies*

The standard of review applied by a federal *habeas* court turns on the analysis conducted by the last state court to review the constitutional violation. *Johnson v. Acevedo*, 572 F.3d 398 (7th Cir. 2009). If the state court found a constitutional error to be harmless beyond a reasonable doubt, the federal court will determine if the state court's harmless-error analysis was reasonable. *Mitchell v. Esparza*, 540 U.S. 12 (2003). Conversely, if the state court failed to properly determine if a constitutional error was harmless, the federal court will independently apply the *Brecht* "substantial or injurious" standard. *Fry v. Pliler*, 551 U.S. 112 (2007).

### *Application of the Brecht Standard*

The issue before this Court is whether the entry of the inadmissible police report into the jury room had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637 (quoting *Kotteakos v. United States*, 328 U.S. 750, 766 (1946)). Under the *Brecht* standard of review, claimants are entitled to relief for trial error only if they can

establish that actual prejudice resulted. *Id.* at 637. Without the substantial and injurious effect, the error is harmless. *Id.* at 638. There must be more than a reasonable possibility that trial error contributed to the verdict. *Id.* at 637.

Furthermore, this Court will not consider what effect the constitutional error might generally be expected to have on a reasonable jury but, rather, what effect it had upon the guilty verdict in the instant case. *Smiley v. Thurmer*, 542 F.3d 574, 584 (7th Cir. 2008). Harmless-error review looks to the evidentiary basis on which the jury actually rested its verdict. *Id.* The inquiry is not whether, in a trial that occurred without the error, a guilty verdict surely would have been rendered but whether the guilty verdict actually rendered in this trial was surely unattributable to the error. *Id.*

Under the *Brecht* analysis, the more evidence the state presents against a defendant, the less substantial the impact of a trial error becomes. When the unchallenged evidence supports the jury's conviction of the defendant, the challenged evidence has no substantial effect and *habeas* relief will not be granted. *Bintz v. Bertrand*, 403 F.3d 859, 869 (7th Cir. 2005) (*Bintz*). Trial errors are often found harmless where the record is replete with overwhelming evidence of the defendant's guilt. *Whitman v. Bartow*, 434 F.3d 968, 971 (7th Cir. 2006).

In *Brecht*, the prosecution's use of post-Miranda silence to impeach did not have a substantial and injurious effect in large part because "the state's evidence of guilt was, if not overwhelming, certainly weighty." Id. at 639. (*See also, Easley v. Frey*, 433 F.3d 969, 975 (7th Cir. 2006) (error was harmless under *Brecht* in light of the powerful evidence facing defendant, which included the testimony of two eyewitnesses, physical evidence and five correctional officers, placing defendant at superintendent's office before the murder); *Taylor v. Bradley*, 448

7

F.3d 942, 950 (7th Cir. 2006); *Toliver v. Hulick*, 470 F.3d 1204, 1209 (7th Cir. 2006). The record in the instant case sufficiently established the defendant's guilt. The weight of the unchallenged evidence supported the jury's verdict, making the error's effects neither injurious or substantial.

The state properly presented the two eyewitness accounts of Green and Gosa. Gosa had a bird's-eye view of the shooting. He sat in the back seat of the Pontiac and watched Petitioner drive the car and lean out his window, firing bullets at Mayes and Green. Green also had a close-up view of Petitioner. When Petitioner initially put his car in reverse and drew even with Green's Chevrolet, Green was only a few feet away from Petitioner. A few seconds later, she also saw him firing the handgun at her car through her rearview mirror. The accounts of Green and Gosa were, in all material regards, consistent with and corroborated each other. The identifications were highly credible because both Green and Gosa knew Petitioner well. Green knew Petitioner for five years. He dated Green's sister. She was familiar with his real names and his nicknames, "Striker" and "Dre." Green also knew that the Pontiac Petitioner was driving belonged to his girlfriend, Valencia Washington. Gosa was also familiar with Petitioner. Gosa, Stevens and Petitioner were all Black P. Stone gang members. Petitioner had asked Gosa to go to a club the night of the murder with Petitioner, and, after Gosa declined, Petitioner offered to drive Gosa home.

Moreover, Green subsequently identified Petitioner, Gosa and Stevens in photographs at the police station and also identified all three in lineups. Also, the state also produced forensic and other evidence that supported Petitioner's conviction. The fingerprints of Gosa and Stevens were found in the Pontiac. All casings found at the scene were discharged from the same

handgun. Petitioner had his own set of keys to the Pontiac, which was owned by his girlfriend. Petitioner was not at home at the time of the murder and didn't come home until the next morning. Petitioner fled when he learned the police had been to his home.

The considerable weight of the properly admitted evidence against Petitioner indicates that the trial error did not have a substantial or injurious effect on the jury's verdict. The weight of the state's evidence against Petitioner convinces this Court that the jury's verdict of guilt beyond a reasonable doubt was rendered despite the error of the presence of the police report, not in evidence, in the jury room.

The trial error did not have a substantial or injurious effect on the jury verdict because of the cumulative information contained in the police report. Because most of the information in the police report had already been properly admitted into evidence, the cumulative nature of the information further made the error insubstantial. *Bintz*, cited, is instructive. There, the defendant's brother told his cellmate that he and the defendant killed a woman. 403 F.3d at 861. The statement was erroneously admitted, and the defendant was convicted of murder. The court viewed the statement as substantive, but cumulative, because the statement was also made to police and other inmates at the jail, and the defendant himself made a similar statement to a former girlfriend. *Id.* at 869. The challenged evidence was harmless because of its cumulative nature.

Here, the police report listed six witnesses to the crime, but this information was in evidence during the trial. The police report also stated the offenders were "Poo" and "Striker." Trial testimony proved that Petitioner was "Striker" and Stevens was "Poo." The report listed

both men as Black P. Stones, but those facts were also in evidence. The cumulative nature of the information in the police report as to evidence admitted during the trial therefore was insubstantial and caused no injury to Petitioner's right to a fair trial.

The court's instructions to the jury can also diminish the effect from a trial error. In *Lopez v. Thurmer*, 573 F.3d 484, 496 (7th Cir. 2009), a key factor that negated any substantial or injurious effect was the court's instructions to the jury that security measures taken during a jury view at which the defendant was present were routine and not indicative of defendant's guilt. "We assume that the jury obeys the judge's instructions." *Id.* (quoting *Pomer v. Schoolman*, 875 F.2d 1262, 1265 (7th Cir. 1989)).

The trial court made clear to the jury, in response to their question about the police report, that the only evidence to be considered was the testimony of the witnesses, the exhibits and any stipulations received by the court. The substantial weight of the properly admitted evidence, along with the court's clear instruction to the jury that the police report was not a part of the evidence, effectively further limited the impact of the trial error. It cannot be said that the entry of the police report into the jury room had a substantial or injurious effect.

## CONCLUSION

For the reasons stated above, the Petition for a Writ of *Habeas Corpus* is denied.

Dated: November 5, 2009

JOHN W. DARRAH
United States District Court Judge